(Lucas Co., Court of Common Pleas.)
July, 1898.

## THE TOLEDO & MAUMEE VALLEY RAILROAD COMPANY v. THE TOLEDO TRACTION COMPANY et al.

Where the cars of a connecting street railroad when passing on the track of another railroad are under the contract between the roads to be entirely under the control of such other road while on its tracks, they are to all intent and purposes the cars of such other road, so long as they are under its control.

---

Decision on motion to dissolve injunction.

MORRIS, J.

This is a motion made by the defendant to dissolve a preliminary injunction granted on the filing of the petition in the case. The matter has been submitted on the pleadings and the evidence, and it was agreed that a final decree may be entered at this time.

A case involving nearly all of the questions in issue here was recently before this court, between the same parties, and in view of the findings of the court in that case, which has since been affirmed, substantially, by the circuit court, (15 C. C., 119), I do not think it necessary to discuss the issues or the evidence at any very great length.

The plaintiff claims that in violation of the terms of its contract with the defendant, entered into June 1st, 1894, the defendant is wrongfully refusing to receive and carry over its tracks in this city, certain cars and passengers which the defendant is bound to so receive and carry under the provisions of that contract. The defendant denies that it has violated its contract in any respect, but charges that the plaintiff, acting in col-

lusion with the Bowling Green Railroad Co., a suburban railroad operated by electricity between the villages of Bowling Green and Perrysburg, in Wood county, and in violation of its contract has tendered cars and passengers of the Bowling Green company to defendant, in order that it may carry such Bowling Green cars over its line in the city of Toledo. The defendant has refused such cars and passengers, and it claims that it has refused to carry none others, and that it intends to continue to so refuse, because, as it is claimed, under this contract with the plaintiff it is not obliged to receive this traffic. The plaintiff by reply denies that the traffic so tendered by it to defendant is that of the Bowling Green company, and it claims in this connection that said traffic is that of the Maumee Valley company, and is embraced within the terms of its contract with the defendant.

These issues in substance were before the court in the former case, and at that time the court was required to consider, and did consider, the contract now in question, and to determine the rights of the parties under that contract. in so far as they were embraced in the issues and evidence of that case. It was claimed at that time by the defendant that under its contract with the plaintiff, a suburban street railway, the plaintiff, could not make traffic arrangements with another suburban company like the Bowling Green road, and thereby get its passengers and cars from such other road, and carry them over its line to the tracks of the defendant, and compel the defendant to take such cars and passengers, and furnish the power and equipment necessary for the transfer of these cars. It was contended that the contract only required the defendant to take such traffic as originated on the line of the belt road which was originally contemplated between the parties, which was constructed between this city and the villages of Maumee and Perrysbury. It was contended in this case, however, and it is now contended, that under that contract the defendant was bound to receive and carry all cars and passengers that might be run over the plaintiff's road; that there was no limit, within reasonable bounds, on the character or amount of the traffic which the defendant was compelled to receive upon its lines in Toledo.

The circuit court held in that case that the contract in question could not be so construed as to prevent the plaintiff, the suburban railway company from receiving a reasonable amount of traffic from another suburban line subsequently constructed, where such additional traffic requires no additional car service, and a perpetual injunction was allowed, restraining the defendant from obstructing its tracks to prevent the use of its tracks by such cars, and from refusing to receive certain cars of the Maumee Valley company and their traffic, obtained from the Bowling Green road, and passing over the tracks of the defendant.

The record and evidence in the former case has been offered in evidence in this case, so that in reviewing the evidence in this case we have been compelled to look through the record, and determine, not only the nature of that controversy, but the findings of the court with reference to it. And the first question that naturally suggests itself, under the circumstances, is, whether there is in principle any material difference between the two cases. If there is not, it is claimed that the relief granted in that case, the decision of the court upon the facts and the law, will bind us in this case. If this case does not differ in some material respect from the former case, so that the facts involved and the question there decided can be distinguished from this, that case should be followed at this time.

Now, while the plaintiff claims that this case is on all fours with the former case, so to speak, in so far as its facts and controlling legal principles are concerned, the defendant claims that the cases are substantially different, or rather, I should say, that they are essentially different in two important respects. That is to say, first, in this case it is conceded that the cars in question are in fact the cars of the Bowling Green company, purchased by it, owned by it; while in the former case, it seems to have been found that the cars then in controversy were in fact the cars of the Maumee Valley company. And in the second place, it is contended that in this action the Bowling Green company is shown to be in fact engaged in carrying on a street railway business on the tracks of the Traction Company, without its consent and against its will and protest; while in the former case there was no evidence of this fact.

As to the first proposition it is urged, and I think fairly, that the fact that the cars objected to were the property of the Maumee Valley company, seems to have been recognized, especially by the circuit court, as a circumstance in that case of considerable importance, in determining the right of the plaintiff to have those cars which were then in question carried by the defendant over its road. And the question now is, what importance, if any, that fact can have in connection with this case. Conceding for the sake of argument that the question of the ownership of the cars in controversy was, as defendant insisted, decisive in that case, let us consider its bearing upon the facts and circumstances of this case, where it is conceded that the cars now objected to actually belong to the Bowling Green company. In the former case, as appears from the evidence and admissions of the parties on the hearing—and it was conced-

ed that at least while in the service of the Bowling Green road, the three Maumee Valley cars then in question were rented to the Bowling Green road; and though the terms of that lease were not in evidence, the circuit court seemed to have assumed, and perhaps correctly, that such lease would terminate directly such cars came upon the Maumee Valley tracks and under its control and management, as provided in its contract with the Bowling Green company, and such rental or lease would only become again operative when the dominion of he Maumee Valley company over these cars on either passage around the belt ceased. In this case the Bowling Green company owns the cars in question; but the con-tract under which these cars are delivered to the Maumee Valley company by the Bowling Green company, and so used in connection with the traffic of the Maumee Valley road, after providing that the Maumee Valley company should receive all cars of the Bowling Green road and carry them around its belt, and that the Bowling Green road shall pay therefor certain specified fares for all passengers so carried upon the Bowling Green cars, it is specifically provided that the Maumee Valley company shall compensate the Bowling Green company for the use of its cars. The clause of the contract to which I refer reads:

"Balance of all fares received upon the cars of second party, after paying the several respective amounts to first party as hereinbefore provided, shall be paid to and retained by second party as rent for the use of its cars while on the railway of first party."

Hence it seems to be contemplated in that contract that while these cars of the Bowling Green company are in the custody and under the control of the Maumee Valley company, they are rented to the Maumee Valley company and held by it as lessee. If this is true, that that is the real relation of the Maumee Valley company to the Bowling Green cars while they are under its control and in its possession, it is clear that for all practical purposes the Maumee Valley company stands as the owner of the cars in their operation, and it can make no difference, certainly, in that event, whether the Maumee Valley company is the actual owner of the car or whether it is owned as lessee. The reasoning of the court in the former decision, unless the facts in some other respect are substantially diff-erent, would entitle the plaintiff in this action to the same relief that it obtained in that action.

And this brings us to the second contention in this case; that is, the Bowling Green company as such is, with the aid of the plaintiff and without the defend-ant's consent, engaged in a street rail-road business upon defendant's tracks. No one claims that this can legally be

done. The plaintiff denies that it is do-ing it in fact, and concedes, if the evi-dence shows this to be the case, it is not entitled to the relief asked in this action. So far as this question is concerned, I am unable to find in the record any evi-dence which satisfies me that the rela-tion between the Bowling Green com-pany and the Maumee Valley company has changed in any substantial respect since the former action was begun. Un-der the contract between these parties, when the Bowling Green cars were de-livered to the Maumee Valley company upon its tracks, the latter company be-came the entire custodian, entitled to the management, control and operation of these cars. That is the situation in the former suit; and in the absence of anything to show any new arrangement or new disposition with reference to this traffic, it must be held that the defend-ant is required to receive these cars from the plaintiff. The evidence shows that the employes of the Bowling Green com-pany, for the time employed on its lines, and for the time devoted to running the cars over the lines of the plaintiff in this action, have continued to do business in connection with this traffic substantially as they did before. The cars operated have been designated as Bowling Green cars, treated as such, and there is no difference in that respect. Tickets have been sold and continued to be sold, fares collected, reports made, settlements—all substantially in the same way. There may have been some change in some re-spects, but in no substantial respect am I able to find any evidence in this case that the operation of this road now differs from what it did on the former trial.

It is claimed that as a matter of fact a course of competition has been carried on these so-called Bowling Green cars with the defendant that did not exist be-fore; that is to say, that recently the Maumee Valley company has issued and has had sold upon its cars—on these Bowling Green cars—six tickets for 25 cents, good for six fares in the city of Toledo, or in the corporations of Perrys-burg or Maumee; that this is a compe-tition with the business of the defend-ant on its own tracks, which is unwar-ranted by the contract, and which shows that the Bowling Green company has in fact been engaged in a street railroad business that it was not engaged in be-fore. If as a matter of fact these tickets have been sold as tickets of the Maumee Valley company, and are a part of its policy under its contract with the defend-ant, the circumstances that they were sold upon the cars of the Bowling Green company, never by that company but by the Maumee Valley company under its contract, then, of course, it is of no im-portance in this action whether there is competition or not in this business, un-less there is something in the contract

between the Maumee Valley company and the defendant which would prohibit this kind of competition. If the business is being done by the plaintiff within the terms of its contract, then the defendants will not be heard to complain. I am unable to find anything in the contract of June 1st, 1894, between the parties to this suit, that will prohibit the Maumee Valley company from selling if it sees fit, tickets at a less rate of fare than that which prevails with the defendant over its line. That contract seems to have been very carefully drawn, and the interests of both parties have been carefully considered, and the effect of it, in my judgment, is to enable the Maumee Valley company to have any of its passengers carried over the specified tracks mentioned in that contract of the defendant, in consideration of the payment to the defendant of a specified fare therein provided for. And if it now occurs that that contract was broader than was contemplated, perhaps, by the parties or by the defendant at the time, it will still be bound by that contract, by the letter of it, in the absence of any showing that would entitle it to equitable relief. And on such consideration of the evidence in this case as I have been able to give it, in view of the holding of the court in the other case, I am unable to see how the defendant is entitled to any relief here which was denied in that action. I am satisfied that in their essential features the two cases are alike. Being of this opinion, it will be my duty to overrule the motion to dissolve the injunction, and in accordance with the stipulation of the parties in this action, to order the injunction prayed for in the petition to be made perpetual.

King & Tracy, for plaintiff.
Smith & Baker, for defendants.